**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4712
_____

JIMI ROSE,
                              Appellant

v.

YORK COUNTY; ADAMS COUNTY; HONORABLE RICHARD K.
RENN;  HONORABLE THOMAS H. KELLEY, VI; HONORABLE SHERYL ANN
DORNEY; HONORABLE  PENNY L. BLACKWELL; HONORABLE JOHN S.
KENNEDY; HONORABLE JOHN W. THOMPSON, JR.; HONORABLE GREGORY
M. SNYDER; MICHAEL E. BORTNER; HONORABLE MARIA MUSTI COOK;
HONORABLE JOSEPH C. ADAMS; HONORABLE HARRY M. NESS;
HONORABLE ANDREA MARCECA STRONG; HONORABLE CRAIG T.
TREBILCOCK; HONORABLE MICHAEL W. FLANNELLY, York County Judges;
HONORABLE JOHN C. UHLER; HONORABLE MICHAEL J. BRILLHART;
HONORABLE JOHN H. CHRONISTE, Senior Judges; HONORABLE ROBERT G.
BIGHAM; HONORABLE THOMAS R. CAMPBELL; HONORABLE MICHAEL A.
GEORGE; HONORABLE JOHN D. KUHN, Adams County Judges
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1-13-cv-02056)
District Judge:  Honorable John E. Jones, III
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 3, 2014
Before:  JORDAN, COWEN and BARRY, <u>Circuit</u> <u>Judges</u>

(Opinion filed: July 8, 2014)

_____

OPINION
_____

PER CURIAM

Jimi Rose sought to file a pro se suit in forma pauperis ("ifp") against York

County, Adams County, and many state court judges in those counties. He complained

of his treatment and rulings in state-court custody proceedings relating to his daughter.

With his complaint, Rose filed copies of motions that he had filed in state court,

including a motion to transfer his custody matter to another county and a motion to

vacate a custody decree (and allow him visitation and other parental rights). In his

complaint, he sought damages, a transfer of the custody matter to federal court, and an

injunction against the York and Adams County judges to prevent them from hearing any

custody matters in which he is a party.

A Magistrate Judge issued a report and recommended that Rose's application to

proceed ifp be granted, the other motions be dismissed and denied, and his complaint be

dismissed without prejudice to amendment. The Magistrate Judge stated that the

complaint in part was barred by the Rooker-Feldman doctrine,[1] the request for an

injunction ran afoul of the Younger abstention doctrine,[2] and the defendants were entitled

---

[1] The doctrine derived from Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

[2] The doctrine stemming from Younger v. Harris, 401 U.S. 37, 41 (1971).

to immunity. The District Court adopted the report and recommendation and stated that Rose could file an amended complaint on or before September 16, 2013.

On September 26, 2013, Rose submitted a document, explaining that he had believed that his typist had submitted his amended complaint on September 10, 2013, and requesting that his amended complaint (which he attached) be considered as filed on September 10, 2013, nunc pro tunc.[3] In his amended complaint, Rose focused on a purported conspiracy, alleging that four judges acted outside of their authority to deprive him of custody of his daughter based on the color of his skin. More specifically, he complained of state court orders that denied him a right to talk to his daughter by telephone, transferred the custody action to another county, appointed a guardian ad litem for his daughter, and granted the guardian ad litem's motion that he undergo psychological testing. He asserted that the basis for these orders and the decision to strip him of his parental rights was race, comparing a custody decision related to his daughter's Caucasian half-sister. Rose sought "injunctive relief" against the defendants.

On September 26, 2013, the Magistrate Judge issued another report and concluded that Rose's amended complaint suffered the same flaws as his original complaint. The Magistrate Judge recommended that the amended complaint be dismissed with prejudice. The Magistrate Judge also determined, based on the analysis of the complaint, that docket entry number 13, which the Magistrate Judge described and considered as a motion for

---

[3] The document, with its "motion nunc pro tunc" and its attached amended complaint, appear as docket entry number 13 on the District Court docket.

leave to amend, should be denied. In the course of the analysis, the Magistrate Judge stated that further leave to amend would be futile and cause unnecessary delay.

On October 18, 2013, the District Court reviewed the matter in the absence of objections from Rose, noted that the Rooker-Feldman and Younger doctrines barred relief, and adopted the Magistrate Judge's report and recommendation. The District Court denied the motion to file an amended complaint nunc pro tunc and dismissed the amended complaint.

Shortly thereafter, the District Court received Rose's request for an extension of time to file objections. The District Court granted the extension of time and agreed to consider his objections. However, the District Court ruled that it would not reopen the case unless the objections convinced the District Court to reject the Magistrate Judge's recommendation.

In November 2013, Rose filed two sets of objections. In them, he asserted that he was not appealing a state court decision or requesting that a state court decision be overturned. He claimed that he was seeking injunctive relief against racial discrimination, in particular, relief against individual judges (he stated that he no longer pursued relief against York or Adams County). Rose asserted that he had exposed the racism of the state court judges by presenting their decisions in the custody matter. He specified that he sought only prospective injunctive relief to prevent several state court judges from hearing his custody case.

4

On December 5, 2013, the District Court ruled that October 18, 2013 order "remain[ed] in full force and effect." The District Court explained that Rose's objections did not alter the previous decision, stating that the judicial officer defendants were shielded by judicial immunity and again noting that the Rooker-Feldman doctrine barred review. Rose appeals.

Rose asserts that he should be permitted to sue state court judges in their personal capacities for injunctive relief for discriminating against him. He asks that the District Court's order be reversed, but he focuses only on his claims against two judges, one in Adams County and one in York County. He specifies that the Adams County judge discriminated against him by transferring his case to York County. And he states that the York County judge called him a racist, made fun of his clothing in the courtroom, and ordered him to go for psychological testing.

We have jurisdiction under 28 U.S.C. § 1291. Cf. Ohntrup v. Firearms Ctr., Inc., 802 F.2d 676, 678 (3d Cir. 1986) (per curiam) (explaining that "most post judgment orders are final decisions within the ambit of 28 U.S.C. § 1291 as long as the district court has completely disposed of the matter") (citation and quotation marks omitted). We may affirm on any basis supported by the record. See Erie Telecomms., Inc. v. City of Erie, 853 F.2d 1084, 1089 n.10 (3d Cir. 1988). Upon review, we will affirm the District Court's judgment.

Because Rose has stated that he no longer wishes to pursue his claims against York or Adams Counties, and raises only his claims for injunctive relief against two

judges in his brief, we consider all other issues waived.  See United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal.")

The injunctive relief that he requested is not available.  The Federal Courts Improvement Act of 1996 amended 42 U.S.C. § 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."  42 U.S.C. § 1983; see also Azubuko v. Royal, 443 F.3d 302, 303-04 (3d Cir. 2006).

Rose may wish to argue that the judges' actions were not taken in their judicial capacity.  However, in his amended complaint, he relied on judicial acts as the basis for his claims of discrimination.  Each of the acts to which he objected – the transfer of his case, the appointment of a guardian ad litem, and the other orders in the custody case, including the ultimate termination of his parental rights – were all actions taken squarely within the judges' official capacity.  His allegations that a judge called him racist and mocked his clothing also described actions that a judge took from the bench.  Cf. Stump v. Sparkman, 435 U.S. 349, 356 (1978) (explaining that judicial immunity extends to alleged actions taken in a judicial capacity, even if any action taken "was in error, was done maliciously, or was in excess of [] authority").  Because Rose did not allege that a declaratory decree was violated or that declaratory relief was unavailable, his claim for injunctive relief was barred.  See Azubuko, 443 F.3d at 304.

Although the District Court also did not allow further amendment, it does not appear that Rose was seeking to amend his complaint again (instead, he requested that his late-filed amendment be accepted as filed on an earlier date).  In any event, given that Rose was permitted to amend once and could not correct the deficiencies in the complaint, it was not an abuse of discretion to conclude that further amendment would be futile.  See Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004).

For these reasons, we will affirm the District Court's judgment.